UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                          3:06-cr-212-J-33MMH

THOMAS D. KING

_____

## ORDER

This cause comes before the Court pursuant to two motions filed by Defendant in this case.  The first is Defendant's Motion for New Trial and Mistrial (Doc. # 212),[1] filed on September 21, 2006.  The Government's Response (Doc. # 230) was filed on October 19, 2006.  The second motion is Defendant's Motion for Arrest of Judgment (Doc. # 213), filed on September 21, 2006.  The Government's Response (Doc. # 231) was filed on October 19, 2006. For the reasons stated herein, Defendant's motions are due to be DENIED.

I.   **LEGAL STANDARDS**

     A.   **MOTION FOR ARREST OF JUDGMENT**

Federal Rule of Criminal Procedure 34(a) states that "[u]pon the defendant's motion . . . the court must arrest judgment if (1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." See Fed. R. Crim. P. 34(a).

     B.   **MOTION FOR NEW TRIAL & MISTRIAL**

_____

[1]     Unless otherwise indicated, cited Court documents are from King II, 3:06-cr-212.

1

A motion for new trial may be granted either when there is newly discovered evidence or when "the interests of justice so require." See Fed. R. Civ. P. 33.  The Eleventh Circuit has stated that "[a] motion for new trial must be viewed with 'great caution'" and "a decision to deny a new trial motion will not be reversed absent an abuse of discretion."  United States v. Reed, 887 F.2d 1398, 1404 (11th Cir. 1989)(citing United States v. Champion, 813 F.2d 1154 (11th Cir. 1987) and United States v. Hall , 854 F.2d 1269, 1271 (11th Cir. 1988)(quoting Bentley v. United States, 710 F.2d 897, 898 (11th Cir. 1983))).

## II.  ANALYSIS

In his Motion for New Trial and Mistrial, Defendant adopts and incorporates by reference the grounds as well as the points and authorities set forth in his prior Motions to Dismiss the Superseding Indictment and Renewed Motion to Dismiss (King I, Docs. # 76 & 86) [2] and Renewed Motion to Dismiss (Doc. # 86).  He also adopts all grounds in his prior Motion for Judgment of Acquittal (King II, Doc. # 147).  Defendant stated that his Motion for Arrest

---

[2]     Doc. # 76 in King I is the Government's Response to Defendant's Motion for Leave to File Supplemental Authority.  The Court assumes that Defendant does not wish to incorporate the points and authorities in the Government's Response and believes that Defendant meant to refer to Doc. # 67, which is his Motion to Dismiss Superseding Indictment.

Doc. # 78 in King I is the Government's Response to Defendant's Second Motion for Discovery Statement of Particulars. Again, the Court assumes that Defendant does not wish to incorporate the points and authorities in the Government's Response and believes that Defendant meant to refer to Doc. # 68, which is his Memorandum in Support of his Motion to Dismiss.

of Judgment also adopted and incorporated the grounds and points and authorities in his Motion for New Trial and Mistrial.   This Order addresses the arguments made in Defendant's instant motions and hereby incorporates by reference its previous Orders entered on the motions Defendant incorporates by reference.   The Court finds that none of the arguments raised in those motions is grounds for a new trial or mistrial.   Because the issues in Defendant's two motions are intertwined, the Court addresses both motions contemporaneously.

### A.   Arrest of Judgment

Defendant argues that he is entitled to arrest of judgment for the reasons stated in his Motion for New Trial and because (1) he was not treated fairly by the Court and (2) the Court did not render judgment on the Motion for Speedy Trial before jeopardy attached in this case.   Defendant's Motion for Arrest of Judgment does not argue that the indictment does not charge an offense, nor does it argue that the Court was without jurisdiction of the offense charged.   Thus, Defendant has raised no legal basis for his Motion and, absent a legal basis, the Motion is due to be denied.

Although Defendant failed to make any legal arguments supportive of his Motion, he did list a number of complaints regarding the manner in which he was treated throughout the trial. Throughout the proceedings in this case, the Court endeavored to treat fairly both the Defendant and the Government.   As the record will reflect, the Court made every effort to treat Defendant and counsel for both sides in this proceeding with civility and

3

respect, a courtesy that counsel for Defendant often neglected to return.  Given their serious nature, the Court responds to several of Defendant's statements in order to clarify facts that it believes Defendant has either taken out of context or mischaracterized.

As the Honorable Learned Hand once observed, "[i]t is impossible to expect that a criminal trial shall be conducted without some showing of feeling; the stakes are high, and the participants are inevitably charged with emotion." United States v. Wexler, 79 F.2d 526, 529-30 (2d Cir. 1935).  Such was certainly the case in Defendant's trial.  Throughout the proceedings, heated words were exchanged, barbs were interjected (see Doc. # 233), and the parties often required this Court's intervention to maintain proper courtroom decorum.  The undersigned endeavored to fulfill her "responsibility to maintain decorum in keeping with the nature of the proceeding" and was mindful of her role as "'the governor of the trial for the purpose of assuring its proper conduct.'" United States v. Young, 470 U.S. 1, 10 (1984)(citing Quercia v. United States, 289 U.S. 466, 469 (1933)).

During the trial, where the Court perceived that the parties improperly provoked one another, it attempted to take corrective action when such action was necessary to provide Defendant a fair trial.  For example, in the situations to which Defendant refers, the Court considered the probable effect the Government's response would have had on the jury's ability to judge the evidence fairly.  In this analysis, the Court took into account both the nature of

4

the comments made as well as any conduct by opposing counsel that may have invited such comments. See Young, 740 U.S. at 12 (citing United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 242 (1940) and Crumpton v. United States, 138 U.S. 361, 364 (1891)). Of course, this Court's determinations regarding which behavior merited admonishment or a curative instruction were made in light of the trial's overall tone and the need for progression in the proceedings.

Having said this, the Court notes that Defendant has now urged the Court to view various episodes in isolation, which is clearly contrary to what the law requires. See Young, 470 U.S. at 16 (citing Johnson v. United States, 318 U.S. 189, 202 (1943)(noting the Supreme Court's view that "[i]n reviewing criminal cases, it is particularly important . . . to relive the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure.")). Viewing certain exchanges in isolation robs them of their context, and creates a distortion of the actual events.

One such example of counsel's distortion of actual events is Defendant's reference to this Court's statement that Defense counsel made an improper objection during Defendant's cross-examination on September 12, 2006. On that day, counsel for the Government was pursuing a line of questioning regarding Defendant's financial state, in particular the reason Defendant had purchased an expensive vehicle if he truly was "out of money," as he had testified. In the midst of this questioning, Defense counsel

jumped to his feet and protested that his client could explain these transactions, and that a loan was involved.  Interpreting this as a clear attempt to coach his witness, the Court admonished Defendant that he could take it up with his client on re-direct. Using body language and tone of voice that communicated an intent to be disingenuous, counsel then stated that he could object on relevancy grounds.  Under the circumstances, the Court did not believe that counsel's second statement was sincere, and, referring to his attempt to coach his witness, told Defendant that such an objection was not proper.[3]  Less than one hour later, when the jury had retired for the day and after the Court had chided both sides and the Defendant for their behavior during the day, Defense counsel complained about this incident.  Then, as it has done here, the Court explained that its comment to counsel related to the fact that he was trying to coach his witness, which the Court viewed as improper.

This incident demonstrates that the Court's rulings throughout the trial took into account the entire context of the proceedings, including the tone of voice, inflection, body language, and other indicators that a transcript of the record may not reflect.  On other occasions to which Defendant has referred, to the extent that

---

[3]     While counsel's non-verbal cues indicated that his "relevancy" objection was insincere, the Court notes that even if the objection had been sincere, it was properly overruled.  The Government's question was clearly relevant because it served to rebut Defendant's claim that he was "out of money."  In response to this statement, the Government questioned why, if he lacked money, had Defendant purchased a $63,000 vehicle at that point in time.

the Court did not admonish counsel, strike a comment from the record, or did not read a curative instruction, it was either because no motion was made for the Court to take such action or it had concluded that the conduct at issue, when considered in the context of the entire trial, in no way prejudiced Defendant's substantial rights. See Reed, 887 F.2d at 1402.

Defendant also complains that the Court rushed him at certain points in the trial. For example, Defendant insinuates that he lacked sufficient time to object to certain instructions during the Court's charge conference, which, not counting the Court's preliminary discussion of proposed instructions on the evening of September 12, lasted approximately forty-nine minutes. He also argues that he was "improperly maligned" when he raised an objection to an instruction the Court had already given to the jury.

A simple review of the record will demonstrate that counsel was treated not just fairly during the charge conference, but also with the utmost leniency. It is nothing short of preposterous for counsel to claim that he was unable to timely object to the Government's money laundering instruction. The docket reflects that the Government filed this instruction on February 3, 2006, a full eight months before the charge conference. Even if counsel lacked the opportunity to review the proposed instruction during the eight months leading up to the trial, the version of the Court's instructions handed out the day before the charge conference indicated its intent to adopt the Government's money

7

laundering instruction, which was based on Eleventh Circuit Pattern Offense Instruction 70.1. Furthermore, during the charge conference on the morning of September 13, Defendant had a clear window of time to object to the instruction's language when the Court and the Government discussed it for several minutes. Throughout that time, Defendant was mute; however, when the Court moved to the next instruction, Defendant immediately interjected and asked the Court to consider another instruction regarding vicarious liability.

After concluding the morning charge conference, the Court noted that it would take up any remaining jury instruction issues at the break. Counsel then had several hours to mull over the money laundering instruction, yet when the Court began discussing the instructions again at the noon break, including another specific discussion about the money laundering instruction, counsel remained silent. Given the fact that the Court discussed the instructions preliminarily on the evening of September 12 and then again on two occasions totaling almost an hour on September 13, the Court firmly rejects Defendant's implication that he lacked an opportunity to timely object.

Moreover, Defense counsel is mistaken in his assertion that the Court would not have permitted argument on such an important issue had it been raised at the conference. As the record will reflect, the Court was generous in allotting time for Defense counsel to make argument to the Court on any number of issues. Throughout the trial, when the jurors informed the Court of outside

time demands, the Court attempted to honor those time commitments; accordingly, the parties were routinely told that the Court would make every attempt to keep its word to the jurors regarding what time court would begin and end for the day. The Court repeatedly explained to counsel that the trial would resume at a certain time on each day, and if the Court was hearing argument on a matter during a break and argument had not concluded on time, it would have to be continued to the next break. Except when further argument was clearly not necessary, the Court uniformly accommodated counsels' request for additional time for argument at another juncture. Consistent with this practice, on the morning of September 13, the Court specifically stated that although that portion of the charge conference would be concluded at a certain time, any remaining argument about jury instructions could be heard during the next break.

Notwithstanding the fact that Defense counsel failed to object under these circumstances, the Court was also willing to hear argument on the issue as soon as Defense counsel raised the objection, after it had already been read to the jury. Particularly given its belief that the timing of the objection was questionable, the Court's abundant leniency with counsel is apparent. Finally, the Court questions the reasonableness of counsel's belief that he was prejudiced by the Government's statement that Defendant's objection was "calculated to deceive." Given the circumstances, it is at best naive for counsel to be surprised or injured by such a statement from his opponent.

9

Furthermore, the Court can find no unfair prejudice when this statement was made at a bench conference outside the jury's hearing and the Government ultimately stipulated to the change in order to avoid an appellate issue.

As for Defendant's claims that he is entitled to Arrest of Judgment because the Court did not rule on his Motion to Dismiss for Speedy Trial Violation before jeopardy attached, the Court finds no basis for arrest of judgment in this argument.  Defendant submitted his Motion to Dismiss for Speedy Trial Violation (Doc. # 82) on August 22, 2006, the day before voir dire began in this case.  If Defendant wished for the Court to rule on this motion prior to trial, or if he believed that he had a right to such a ruling before the trial began, he was free to promptly raise the issue with the Court when voir dire began on August 23, 2006 at 9:00 a.m.  The jury was not sworn until August 24, 2006, and Defendant was afforded opportunities to make such a request before that time, but he declined to do so.

In sum, the Court finds that Defendant's Motion for Arrest of Judgment is due to be denied because there is no legal basis for the relief he requests.  Furthermore, the Court believes that the record disproves counsel's claims that he was unfairly treated, and there is no basis for arrest of judgment on Speedy Trial grounds.

**B.   New Trial & Mistrial**

      **1.   Evidence of Efforts Made to Fix the Regency Problem After the Stop Work Order**

Defendant argues that he is entitled to a new trial or

mistrial because the Court did not permit certain evidence regarding efforts made to fix the Regency problem after the Stop Work Order was issued on June 25, 2005. Defendant refers to this evidence as "good faith" evidence and argues that it was relevant to Defendant's intent to defraud.

The record reflects that the jury was presented with evidence and lengthy testimony of efforts made to fix the Regency problem after the Stop Work Order; however, the Court did not permit all such evidence. When evidence or testimony that related to efforts after the Stop Work Order was excluded, it was done so largely under Federal Rule of Evidence 403. Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

As the record reflects, the Court entertained lengthy and repeated argument on the issue of Defendant's attempts to fix the Regency problem after the Stop Work Order. According to Defendant, evidence regarding his attempts to fix the Regency problem after the Stop Work order was "good faith" evidence of his lack of intent to defraud client companies when he contracted with Regency. Specifically, Defendant sought to introduce evidence that (1) he had paid certain claims after the Stop Work Order; (2) he attempted to acquire his own insurance company; and (3) he paid fines and offered to settle with the State of Florida. Out of these three categories of evidence, the Court permitted evidence both of claims paid after the Stop Work Order and Defendant's attempts to acquire

11

his own insurance company.  To the extent that the Court did not permit all of Defendant's evidence in these three categories, it was the result of its conclusion that the probative value of that evidence was substantially outweighed by its prejudicial effect.

Defendant argues that this "good faith" evidence would have tended to show that Defendant lacked the intent to defraud his client companies.  The indictment charged that Defendant defrauded client companies when he contracted with Regency even though he knew it was illegal to contract with a non-admitted workers' compensation insurer, and he had no assurance that Regency was solvent or was able to pay claims.  (Doc. # 1, p. 5.)  The indictment also alleged that part of Defendant's scheme to defraud was that by contracting with Regency to provide workers' compensation to Miralink's client companies, Defendant exposed those companies and their employees to the risk that their claims for medical expenses, lost wages, and other benefits would not be paid.  (Id.)

The evidence Defendant sought to introduce generally dealt with his attempts to fix the problem created by using Regency. With nearly all of this evidence, there was some risk that the jury would be confused, be misled, or conclude that because Defendant regretted his decision or tried to fix the problem created by using Regency, he must be a good person who does not deserve to be punished, even if he committed the crimes charged.  Given the nature of the crimes charged, evidence that, for example, fines were paid to the State of Florida to keep Miralink's doors open,

12

appeared to have only minimal probative value to show that Defendant did not know when he first contracted with Regency that it was not legal to do so.  That minimal probative value was clearly outweighed by the fact that the jury was likely to be confused or misled.  For this reason, the Court ultimately concluded that while such evidence may be relevant for sentencing purposes, it was not admissible at trial because its probative value was substantially outweighed by the danger that the jury would be confused or misled.

Where considerable evidence of efforts made to fix the Regency problem was admitted as "good faith" evidence, and where the Court instructed the jury that good faith was a defense to the charges, it cannot find that a new trial or mistrial is warranted.

### 2. Sham Insurance

Defendant next argues that he should be granted a new trial or mistrial because the jury was instructed that

> with respect to the issue of Defendant's knowledge in this case, if you find from all the evidence beyond a reasonable doubt that Defendant committed these offenses, and deliberately and consciously tried to avoid learning that Regency Insurance was not an authorized insurance carrier and/or that Regency Insurance provided sham insurance, you may treat such deliberate avoidance of positive knowledge as the equivalent of knowledge.

(Doc. # 203, p. 25.)  Defendant argues that Defendant was not charged with knowing, nor did the Government prove that he knew, that Regency was a sham company or provided sham insurance.  For the reasons stated in the Government's response, Defendant's motion for a new trial or mistrial on this basis is due to be denied.  The

United States proved that (1) providing insurance that was not authorized by the State of Florida violated state statutes and was, therefore illegal; (2) Regency was "sham" insurance in the sense that it purported to be genuine workers' compensation when it was not; and (3) that Defendant knew, or was deliberately ignorant of, Regency's sham nature.  The fact that the word "sham" was not used in the indictment does not mean that Defendant was convicted on a theory not charged in the indictment.  Thus, Defendant is not entitled to a new trial or mistrial on this basis.

### 3.    Illegal Insurance

Defendant argues that he is entitled to a new trial or mistrial because the Government was permitted to question witnesses whether they would have purchased from Regency if they had been told that Regency was providing illegal insurance.  Defendant argues that he should have been permitted to ask the converse of this question, which he argues is whether they would have purchased from Regency "if they had been told the insurance was being purchased from what was understood to be a legal company, in that it was permissible to use Regency because Miralink had been turned down by other carriers and <u>could</u> thus use a non-admitted carrier." (Doc. # 212, p. 5.)

First, the Court notes that the question posed is not the converse of the Government's question.  The converse of the Government's question would have been whether they would have purchased from Regency if they had been told that Regency was not providing illegal insurance.

14

Second, and more importantly, the Court notes that Defendant once again argues that it is the province of the jury to decide the law; however, questions of law are for the Court.     See, e.g., Marbury v. Madison, 5 U.S. 137, 178 (1803)("It is emphatically the province and duty of the judicial department to say what the law is."); United States v. Clements, 588 F.2d 1030, 1037 (5th Cir. 1979).  Defendant asserts that the jury should have been permitted to decide whether the law allowed Miralink to use a non-admitted carrier because Miralink had been turned down by other carriers. Defendant also argued repeatedly that the jury should be permitted to decide whether there were statutory exceptions to the requirement that a workers' compensation insurer be admitted. Defendant further argues that he has proven that Miralink was permitted to use Regency, despite the fact that it was not admitted, because Miralink had been turned down by other carriers.

Contrary to Defense counsel's unfailing arguments that Miralink was permitted to use Regency because Miralink had been turned down by other carriers and/or that there were other exceptions to the statutory requirement of admission, both the undersigned and the presiding judge before her determined as a matter of law that there are no exceptions to the statutory requirement that workers' compensation carriers have a certificate of authority from the state of Florida before they may legally provide workers' compensation insurance in this state.  Of course, as Defendant repeatedly was made aware, he was free to argue, and the jury was free to decide, that Defendant subjectively believed

that the law provided for such exceptions; he simply was not permitted to argue that, as a matter of law, those exceptions existed. Accordingly, Defendant is not entitled to a new trial or mistrial on this basis.

### 4.   Illegal for Miralink to Contract with Regency

Defendant next argues that he is entitled to a mistrial or new trial because there was no proof that it was illegal for Miralink to contract with Regency to provide workers' compensation insurance. Defendant states that the indictment contains an incorrect statement of the law, and that it was not illegal for Miralink to contract with Regency to provide workers' compensation insurance. For this proposition, Defendant cites to Florida Statute § 627.418, which he argues "specifically provides that, even if a contract for insurance did not comply with the Florida Insurance Code, it is still enforceable in the State of Florida." (Doc. # 212, p. 6.) For the reasons stated in the Government's Response (Doc. # 230, p. 7), and the Government's Trial Brief (Doc. # 20), the Court disagrees with Defendant's interpretation of this statute and finds that it does not stand for the proposition he asserts. This is particularly true because in Florida "an agreement that is violative of a provision of . . . a valid statute, or an agreement which cannot be performed without violating such a . . . statutory provision, is illegal and void." Schaal v. Race, 135 So. 2d 252, 256 (Fla. 2d DCA 1961). Accordingly, the Court declines to grant Defendant a new trial or mistrial on this basis.

### 5. Exceptions to Requirement that Workers' Compensation Carrier be Admitted

Defendant believes that he is further entitled to a new trial or mistrial because the Court ruled, as a matter of law, that there are no exceptions to the requirement that a workers' compensation carrier be admitted to sell workers' compensation insurance in the state of Florida.

In spite of previous rulings that there were no exceptions to the statutory requirement, the Court allowed the parties lengthy argument on this issue at trial.  The undersigned, just as the previous presiding judge had done, found as a matter of law that there were no exceptions to the requirement that a workers' compensation insurance carrier be admitted in Florida and the other relevant states in the indictment.  As stated  supra, it is the Court's duty to decide issues of law.  Having determined as a matter of law that the exceptions do not exist, and for the reasons set forth in the Government's Trial Brief (Doc. # 20), Defendant's motion for a new trial and mistrial on this basis is due to be denied.

### 6. April 18th Email

Defendant argues that he is entitled to a new trial or mistrial because the Court admitted the April 18th email from Jones and Miller into evidence.  Defendant argues that the document was not admissible because (1) Defendant says he never saw or discussed it with his attorneys; (2) the head of the Miralink IT department should not have been allowed to authenticate the document; and (3)

17

the Court admitted the document when the Court had ruled that Defendant could not assert the reliance on advice of counsel defense.

First, as the Government notes in its Response, whether Defendant saw or discussed the contents of the email goes to the weight of the evidence, not its admissibility.

Second, Defendant implies that the email should not have been admitted through David Malys, who authenticated the document as the former head of Information Technology at Miralink. The record reflects that Defendant withdrew his only evidentiary objection, which was that he was not certain Malys was obligated to help maintain the confidence of electronic records at Miralink and he believed an evidentiary hearing may be necessary to establish the factual predicate. This objection was withdrawn explicitly on the afternoon of August 25, at which time Defense counsel acknowledged that Malys's testimony that day had established that predicate.

Third, Defendant argues that the Court should not have admitted the email because Defendant had not been permitted to assert the defense of reliance on advice of counsel. Defendant mischaracterizes the Court's ruling, which was that Defendant had not shown a proper predicate for the argument that he relied on his attorneys' advice that it was proper to use Regency. The Court so ruled because Defendant was unable to identify any attorney who gave him that advice. In fact, the testimony revealed that no attorney gave Defendant such advice. Accordingly, the Court ruled that until Defendant could lay the proper predicate, Defendant

18

could not argue that he relied on an attorney's advice that it was proper to use Regency.  The Court did <u>not</u> rule, as Defendant states, that Defendant could not rely on advice of counsel, and it did not rule that Defendant could never raise the defense of reliance on advice of counsel that it was proper to use Regency. Indeed, the Court was quite clear that Defendant could make such arguments as soon as he laid the proper predicate.

For these reasons, and for the reasons set forth in the Government's Response (Doc. # 230) and the Government's Motion in Limine to Preclude Improper Argument in Opening Statement Regarding Alleged Exceptions to State Statutes and Alleged Reliance on Advice of Counsel (Doc. # 71), and during the Court's hearing on this issue on August 24, 2006, the Court denies Defendant's motion for new trial or mistrial on this basis.

### 7.   No Insurance Between February 15 and March 1, 2002

Defendant argues that he is entitled to a new trial or mistrial because the Government argued that Miralink failed to insure its client companies between February 15 and March 1, 2002. Defendant asserts that the Government's claim that Defendant failed to insure Miralink's client companies between the period of February 15 and March 1 was not used as 404(b) evidence, but rather was used as proof of the fraud set forth in the indictment. Defendant also objects because he says that the Government's allegation "was not true" because it "was undisputed that the Regency insurance was retroactive to February 15, 2002, and thus provided coverage for the time period the Government asserted there

was no coverage." (Doc. # 212, p. 10.)

The Government responded by stating the following:

Before trial, the United States noticed King that it intended to introduce evidence of Miralink's failure to insure its client companies between the period of February 15 and March 1, 2002. The United States explained that- partly because the failure specifically was alleged in the "back-dated" allegation of the Indictment- the evidence was intrinsic to, and inextricably intertwined with, the offenses charged in the Indictment; that evidence, therefore, was not evidence to be admitted pursuant to Fed. R. Evid. 404(b); but that, "in an abundance of caution," the United States was noticing King of its intent, as it would have been required to do if the evidence had been Rule 404(b) evidence.

(Doc. # 230, p. 10.) As the Government noted, the Court admitted testimony on this matter as intrinsic evidence proving the charges in the indictment. (Id. at 11.)

The indictment charged "that it was part of the fraudulent scheme that King, acting through Miralink, contracted with Regency to provide insurance to Miralink's client companies and that it was part of that scheme that 'the documents purportedly showing Regency's WCI coverage of Miralink were back-dated.'" (Id. at 10 (quoting Doc. # 1).) For the reasons stated in the Government's Response, Defendant is not entitled to a new trial or mistrial on this basis because the evidence was intrinsic to, and inextricably intertwined with, the offenses charged in the indictment and was not introduced pursuant to Fed. R. Evid. 404(b).

### 8.   Defendant's Jury Instructions

Defendant argues that he is entitled to a new trial or mistrial because the Court did not give all of his requested non-

pattern jury instructions and that "they were rejected without the benefit of any argument." (Doc. # 212, p. 10.)  Defendant's motion limits his argument for a new trial or mistrial on this basis to the Court's decision not to give certain non-pattern or modified pattern instructions that Defendant submitted.  Defendant calls this type of instruction a "special" instruction and, for the sake of clarity, the Court will refer to them in the same manner in its discussion.

Before the trial, both parties were instructed that any non-pattern jury instructions should be submitted along with a memorandum of law supporting the request for a non-pattern instruction.  (Doc. # 30, p. 1.)  One of the reasons for the Court's request for a memorandum of law was to provide the parties the opportunity to present unlimited argument with respect to each non-pattern or modified pattern instruction that was submitted. This opportunity for unlimited argument is particularly helpful for all involved because the Court generally anticipates that the length of a charge conference may at times be constrained, and it is frequently not practicable to have such unlimited oral argument on proposed instructions at trial.

As for the Court's decision not to give certain of Defendant's instructions, the law is clear that "[a] district court has broad discretion to determine what instructions to give and in what form."  United States v. Vicaria, 12 F.3d 195 (11th Cir. 1994)(citing United States v. Orr, 825 F.2d 1537, 1542 (11th Cir. 1987)); United States v. Gaines, 690 F.2d 849, 856 (11th Cir.

1982)).  One caveat is that a defendant has the right to have the jury instructed on his theory of defense.  See, e.g., United States v. Ruiz, 59 F.3d 1151, 1154 (11th Cir. 1995).  However, "[a] refusal to give a requested theory of defense instruction is reversible error only if the requested instruction '(1) was correct, (2) was not substantially covered by the court's charge to the jury, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense.'" United States v. Camejo, 929 F.2d 610, 614 (11th Cir. 1991)(citing United States v. Benz, 740 F.2d 903, 910 (11th Cir. 1984), cert. denied, 474 U.S. 817 (1985))).

A court is not obligated to give a jury instruction that is argumentative.  See United States v. Davis, 487 F.2d 112, 126-27 (5th Cir. 1973)(upholding district court's rejection of a defendant's proposed instruction that was "argumentative in content" and "more appropriate to a lawyer's jury argument than to a court's jury instructions as to the law."); see also United States v. Risch, 87 F.3d 240, 242 (8th Cir. 1996)(finding that a district court is not obligated to give an argumentative jury instruction).  Moreover, a defendant is not entitled to "a judicial narrative of his version of the facts, even though such a narrative is, in one sense of the phrase, a 'theory of the defense.'" United States v. Barham, 595 F.2d 231, 244 (5th Cir. 1979).

When a party proposes an instruction to the court, the court is not bound to use the language offered in a proposed instruction.

22

This is true even when the instruction is labeled a "theory of defense" instruction by Defendant, because "[c]alling a proposed instruction a 'theory of defense' instruction . . . does not automatically require that it be given in those words.  If the instruction does not concern factual issues properly before the jury or if it is otherwise confusing, it need not be given at all." United States v. Malatesta, 583 F.2d 748, 759 (5th Cir. 1978); see also United States v. Russell, 717 F.2d 518, 521 (11th Cir. 1983)("A court is not bound to use the exact words and phrasing suggested by counsel in its charge.")(citing Malatesta, 583 F.2d at 759).

In this case, with each "special" instruction that Defendant submitted, the Court carefully and open-mindedly reviewed the proposed instruction as well as the memorandum of law that accompanied it.  As Defendant notes, the Court declined, for a number of reasons, to give many of Defendant's "special" instructions.  Although the discussion  is not intended to be exhaustive, some of the Court's reasons for declining to give certain of Defendant's instructions are elaborated herein.

Defendant's first "special" instruction was based on Eleventh Circuit Basic Pattern 9.1.  The Court gave a Basic 9.1 instruction, but did not add the additional sentence that Defendant proposed. The Court declined to add this sentence to the pattern instruction because, among other reasons, the language of that sentence was argumentative in nature.  Defendant was free to argue to the jury during closing argument how they should apply the pattern language

to the facts of the case, but such arguments were not appropriate for the Court's charge to the jury.

Defendant's second "special" instruction was based on Eleventh Circuit Special Pattern 1.2.   The Court gave a Special 1.2 instruction, but did not make the modifications that Defendant proposed.   Defendant suggested that the last sentence of the instruction read, "And, of course, the fact that a witness has plead [sic] guilty to other crimes with which he has been charged is not evidence of the guilt of any other person." (Doc. # 158, p. 7.)[4]  The pattern instruction reads "And, of course, the fact that a witness has plead [sic] guilty to the crime charged in the indictment is not evidence, in and of itself, of the guilt of any other person."   Among other reasons, the Court declined to make Defendant's proposed alteration because it found that the pattern instruction was a clearer and more accurate statement of the law.

Defendant's third "special" instruction was based on Eleventh Circuit Special Pattern 9.   Defendant proposed that the Court delete the words "religiously, politically, or morally" in the second paragraph and alter the language of the pattern to read:

> On the other hand, if you have a reasonable doubt as to whether the Defendant acted in good faith, sincerely believing *that the workers' compensation carrier was not required to be an admitted workers' compensation carrier, or that there were exceptions to any such requirement, or that, if not an admitted carrier, any such lack of admission was only an administrative and not a criminal matter*, then the Defendant did not intentionally violate

---

[4]  Defendant's proposed instruction also omitted the word "of" in the fourth sentence; however, the Court assumed that this was a typographical error.

a known legal duty– that is, the Defendant did not act "willfully"– and that essential part of the offense would not be established.

(Doc. # 158, p. 8)(emphasis added to reflect Defendant's proposed alterations to pattern language).  Among other reasons, the Court declined to alter Special Pattern 9, which is typically and more appropriately used for proof of willfulness under the Internal Revenue Code, because it found that its good faith instruction substantially, and more accurately, covered the material contained in Defendant's proposed instruction.

Defendant's fourth "special" instruction was based on Eleventh Circuit Special Pattern 18.  Defendant wished to modify this pattern by substituting the word "while" for the word "before." Among other reasons, the Court declined to make Defendant's proposed change when it instructed the jury on good faith reliance on advice of counsel because the unmodified pattern instruction was a more accurate statement of the law.

Defendant's fifth "special" instruction was entitled "Duty to Investigate."  Among other reasons, the Court declined to give this instruction in light of its rulings on the "duty to investigate" issue and because of the proposed instruction's argumentative content.[5]

Defendant's sixth "special" instruction was entitled "Money Laundering."  Among other reasons, the Court declined to give this instruction because it found that the content of this instruction

---

[5]    For a more complete discussion of the "duty to investigate" issue, see section 10 of this Order.

was substantially, and more accurately, covered in the pattern money laundering instruction to be given to the jury.

Defendant's seventh "special" instruction was entitled "Ambiguity." This instruction related to Defendant's claim that he believed certain statutory exceptions existed to the requirement that a workers' compensation carrier be admitted, and that those exceptions applied to Regency. Among other reasons, the Court declined to give this instruction because it found that its good faith instruction substantially, and more accurately, covered the issue of Defendant's good faith. The pattern instruction was also preferable because Defendant's proposed instruction was argumentative and better suited for closing argument than for the Court's instructions to the jury.

Defendant's eighth, ninth, and tenth "special" instructions were entitled "Deliberate Ignorance," "Vicarious Liability Mail Fraud," and "Vicarious Liability Wire Fraud," respectively. Among other reasons, the Court declined to give these instructions in light of its rulings on the "duty to investigate" issue and because of the proposed instructions' argumentative content.[6]

Defendant's eleventh "special" instruction was entitled "State Civil/Administrative Violation." Among the reasons the Court declined to give this instruction was that it was substantially, and more accurately, covered by the Court's good faith instruction. Furthermore, the pattern instruction given by the Court was also

---

[6]   For a more complete discussion of the "duty to investigate" issue, see section 10 of this Order.

preferable because Defendant's proposed instruction was argumentative and better suited for closing argument than for the Court's instructions to the jury.

Defendant's twelfth "special" instruction was entitled "Breach of Contract Does Not Support a Mail Fraud Conviction." Among other reasons, the Court declined to give this instruction in light of its rulings on the "duty to investigate" issue and because of the proposed instruction's argumentative content.[7]

Defendant's thirteenth "special" instruction was entitled "Purchase of Insurance from Regency– Was it Illegal." Among other reasons, the Court declined to give this instruction because it was argumentative and an inaccurate statement of the law.[8]

Defendant's fourteenth "special" instruction was entitled "Claims Under $250,000." Among other reasons, the Court declined to give this instruction because its argumentative content made it better suited for closing argument than for the Court's instructions to the jury. Additionally, the Court was concerned that the proposed instruction could mislead or confuse the jury regarding the nature of the charges against Defendant in this case.

Defendant's fifteenth "special" instruction was entitled "Good Faith Defense to Charge of Intent to Defraud." In this instruction, Defendant requested "that the 11th Circuit Pattern Jury

---

[7]   For a more complete discussion of the "duty to investigate" issue, see section 10 of this Order.

[8]   For a more complete discussion of Defendant's arguments on this issue, see section 4 of this Order.

Instruction, Special No. 17, 'Good Faith Defense to Charge of Intent to Defraud' be given."  The Court granted Defendant's request for this instruction and utilized Special Pattern 17 when it instructed the jury in this case.

In sum, although the Court declined to give the majority of Defendant's "special" instructions, it did so after a thorough review of both the proposed instruction and the memorandum of law that accompanied it.  As is explained _supra_, to the extent that Defendant's "special" instructions were not given, it was the result of the Court's conclusion that the requested charge was not appropriate in this case.  Accordingly, Defendant's motion for a new trial or mistrial on this basis is due to be denied.

### 9.  Advice of Counsel

Defendant argues that he is entitled to a new trial or mistrial because the Court ruled that he had not laid the proper predicate for the advice-of-counsel defense.  Contrary to what Defendant stated in his motion, the Court's pre-trial ruling that Defendant had failed to lay the proper predicate for this defense was limited to argument in Defendant's opening statement.  The Court explained to Defendant that as soon as he could lay the proper predicate-- that is, show that a lawyer actually provided him with the advice he says he relied on-- he could use that defense.  The hearings were held on the Government's Motion in Limine to Preclude Improper Argument in Opening Statement Regarding Alleged Exceptions to State Statutes and Alleged Reliance on Advice of Counsel (Doc. # 71).  As the title of the motion makes clear,

the Government's motion merely requested that Defendant be precluded from arguing the advice-of-counsel defense during opening statement.  The Court did not rule that Defendant could never raise this defense; rather, it precluded statements regarding this defense in opening statement.  The Government asserted that "[t]he United States . . . has never contended-- and has never asked the Court to rule-- that Defendant King should be precluded from attempting to present evidence to lay a predicate for a claim of advice of counsel and/or evidence of reliance on such advice of counsel." (Doc. # 101, p. 1.)  Of course, the record reflects that this issue was earlier clarified for Defense counsel at the Court's hearing on August 25, 2006, where the following exchange took place:

> MS. RAAB:  Your Honor, Mr. Falgatter is confusing attorney-client privilege with advice of counsel.  He can use the advice of counsel defense, that's fine.  We didn't say he couldn't.  We ask that he not be able to present it to the jury in opening statement before he proved that there was such a predicate.  But we didn't even ask the court to keep him from using advice of counsel.

> THE COURT:  And I said that again this morning, didn't I?

> MS. RAAB:  Right, Your Honor. . . .

> . . .

> MR. FALGATTER: Judge, I don't have argument.  I seek some clarification.  I must be confused.  I thought the court –

> THE COURT:  Go ahead.

> MR. FALGATTER: I just heard the government say that we're not prevented from relying on advice of counsel.  I have perhaps misunderstood.  I thought the

> court's ruling was that we had not established an actual predicate to do so and I would have to produce more evidence. I'm telling the court, I don't have more. It seems to me, unless I'm not understanding the court correctly, that at this juncture I am precluded from relying, which would presumably mean I can't call Mr. Jones to testify about it, obviously can't call Mr. Miller because he's not available.

THE COURT:    Mr. Falgatter, I'm not closing the door. You lay the proper predicate. This weekend you think about it and get your appropriate witnesses lined up, that door will be opened to you, all right?

(Trial Tr. August 25, pp. 2:4-13; 3:21-25; 4:1-13.)    For the reasons stated in the Government's Response (Doc. # 230), and given the Court's and the Government's repeated clarification regarding the Court's ruling on the advice of counsel defense, Defendant's motion for a new trial or mistrial on this basis is due to be denied.

### 10.   Failure to Investigate

Defendant argues that he is entitled to a new trial or mistrial because the indictment alleged that he did not investigate Regency's solvency, but the Government did not identify during the trial a duty to investigate the solvency of Regency.    As the Government counters, the indictment does not charge a duty or a failure to discharge a duty; therefore, the United States was not required to allege or prove such a duty.    The United States' theory was that Defendant's deliberate ignorance was shown by the fact that he failed to investigate Regency's solvency, particularly when faced with signs that the company did not provide valid insurance.

Accordingly, the Court finds that Defendant's motion for a new trial or mistrial on this basis is due to be denied.

### 11.  Business Records (TPA One & Other Entities)

Defendant argues that he is entitled to a new trial or mistrial because the Court did not permit the admission of Defense Exhibits such as 1Q, 1E, and 6B, which he argues were business records of Miralink because they were business records of TPA One. Defendant's first complaint relates to 1Q, which was admitted into evidence on September 12.  Given that the exhibit was admitted, Defendant's complaint as to 1Q is unclear.  Defendant's next complaint relates to 1E, which was not admitted because Defendant was unable to demonstrate how an unsigned, un-executed contract drafted by another company met the reliability requirements of a business record.  6B was not admitted on relevancy grounds.  For the reasons stated in the Government's Response (Doc. # 230), Defendant's vague assertions that some other documents should or should not have been admitted as business records cannot be adequately addressed without further information from Defendant. In sum, Defendant fails to demonstrate why the interests of justice would require a new trial or mistrial based on the Court's refusal to admit these exhibits.

### 12.  CNA Litigation

Defendant argues that he is entitled to a new trial or mistrial because Defendant's Exhibits 3A-F and testimony regarding the CNA litigation were not admitted because the Court found that it was irrelevant to King's defenses.  Specifically, Defendant's

motion argues that the Court erred in refusing to admit Exhibit 3C because that exhibit would have supported Defendant's claimed good faith belief that it was "perfectly proper" to use an offshore insurance company since CNA was doing so.

First, as the Government recognizes in its Response (Doc. # 230), although evidence of CNA's cancellation may have been a motivating factor in the use of Regency, it was not a justification for Defendant's criminal actions.  To the extent that CNA's cancellation provided Miralink with a short period of time to investigate new policies, the Court found that the cancellation was relevant and permitted evidence to that effect.  Of course, even though relevant, some evidence was found inadmissible on other grounds, such as when the probative value of the evidence would be substantially outweighed by the risk of unfair confusion and prejudice.

Second, evidence regarding Northrock, the offshore reinsurance carrier, was not admitted into evidence because its probative value was substantially outweighed by the risk that the jury would be confused or misled by that evidence.  Defendant wished to introduce Exhibit 3C, which stated that "North Rock is a Bermuda insurance company that is not authorized to do business in the State of Florida and which does not do business in the State of Florida" (Def. Ex. 3C at n.2) to show that Defendant had been advised that "utilizing an offshore carrier- even one that was <u>not</u> authorized to do business in Florida- could not possibly have been illegal, because CNA, a very reputable carrier, was doing the same thing."

(See King II, doc. # 127, p. 3.)  Such evidence was not permitted

because of the likelihood that it would confuse the jury, because:

> This argument is a total distortion of fact and law - all
> based on a clever use of the word "utilized."  As King's
> counsel well knew, King "utilized" Regency, a non-
> authorized carrier, to write workers' compensation
> insurance for his client companies.  Regency's non-
> authorized status meant that no state entity had
> investigated Regency's solvency or its ability to pay
> claims.  On the other hand, CNA and Continental
> "utilized" North Rock only as a reinsurer, primarily for
> tax purposes.  North Rock's non-authorized status was
> irrelevant because Continental wrote the workers'
> compensation insurance, Continental had been authorized
> by the State of Florida to do so, the State of Florida
> had investigated Continental's solvency and ability to
> pay claims, and Continental had paid into the guarantee
> fund.

(Doc. # 230, p. 19.)  Accordingly, Defendant is not entitled to a

new trial or mistrial on this basis.

### 13.  Cross-Examination of Rebuttal Witnesses

Defendant argues that he is entitled to a new trial or

mistrial because the Court limited his cross-examination of

rebuttal witnesses Tom Brown and Michael McCafferty.  Under the

Federal Rules of Evidence, cross-examination should be limited to

the subject matter of the direct examination.  See Fed. R. Evid.

611(b).  It is proper then for the Court to sustain an objection to

a question on cross-examination if that question exceeds the scope

of the direct examination.

Defendant does not explain which portions of Mr. Brown's

testimony were improperly limited on cross-examination; however,

the Court sustained only one objection to Defendant's cross-

examination of Mr. Brown during his rebuttal testimony, so it

33

assumes that this is the portion to which Defendant refers.  The
Government objected to a question from Defense counsel that asked
when Mr. Brown first learned that Regency did not exist.  The
existence or non-existence of Regency was not a topic on the
Government's direct examination of Mr. Brown; therefore, the Court
sustained the Government's objection that the question was outside
the scope of direct.

As to Mr. McCafferty's testimony, Defendant states that he
should have been permitted to inquire as to his knowledge, dealing,
and conversations with Regency since the Government had elicited
testimony that Mr. McCafferty had signed a plea agreement that
alleged a fraud involving his activities with Tom Brown and
Regency.  When Mr. McCafferty testified during the Government's
rebuttal case on the afternoon of September 13, 2006, the
Government's direct examination lasted roughly five minutes and was
limited to the following: (1) where the witness lived; (2) whether
he was retired; (3) his last job before retirement, which was
President and CEO of TTC Illinois, Inc.; (4) the type of business
that TTC was, and its size; (5) how long the witness ran TTC; (6)
that, in connection with TTC Illinois, the witness had entered into
a plea agreement with the United States Attorney's Office; (7) that
the terms of the agreement were that McCafferty would plead guilty
to one count of conspiracy to commit fraud and face five years in
prison and would forfeit certain assets; (8) that the witness would
forfeit assets including a farm, a condo, and several vehicles; (9)
that the witness had had a telephone conversation with Defendant;

(10) that the reason for the conversation with Defendant was that the witness had been given a cease and desist order from the State of Florida and he was looking for a company to take his Florida clients; (11) that during the conversation with Defendant, the witness had advised Defendant that he had purchased insurance from Regency, a company not licensed to do business in Florida; (12) that the witness's company had used Regency only temporarily until it could get a policy with Cigna Insurance; and (13) that the witness advised Defendant that he could not use Regency in the State of Florida.

On cross-examination, Defendant inquired into the following matters, which the Court ruled were outside the scope of the Government's direct examination of Mr. McCafferty: (1) whether the witness made follow-up calls to Defendant to consummate the transfer of his Florida clients; (2) whether the witness had dealt with Mr. Brown in the early part of 2001; (3) whether the witness had knowledge about what Mr. Brown told Defendant; (4) whether the witness had knowledge as to whether Mr. Brown believed Regency to exist in 2001 and 2002; (5) information that the witness purportedly knew about Regency; (6) whether the witness conferred with attorney Mike Miller during the period when his company dealt with Regency; (7) whether the witness conferred with Holland & Knight during the period when his company dealt with Regency; and (8) whether the witness had any advice that Regency was valid

35

during the period when his company dealt with Regency.[9]   All of these matters were clearly outside the scope of the Government's direct examination and the Government's objections were appropriately sustained; however, even assuming that Defendant's questions were not outside the scope, Defendant has not demonstrated an entitlement to a new trial or mistrial on this basis.

### 14.  Jury Instructions

Defendant argues that he is entitled to a new trial or mistrial because, when the Court permitted him to object to a jury instruction after it had been read, the Court read the instruction to the jury with the corrections Defendant had requested. Defendant now states that the Court should have not read the entire instruction with the correction, but rather should have merely told the jury that the words "insurance fraud" were replaced with the words "mail fraud and wire fraud."[10]

---

[9]   Of course, the Court could have ruled that Defendant was not entitled to ask such questions because of their implication that Defendant had received legal advice that it was proper to use Regency, which Defendant was never able to establish.

[10]   Defendant's view of the actual circumstances surrounding his objection to the money laundering instruction are slightly different from what the record reflects.   After reading the instructions to the jury in the afternoon of September 13, 2006, the undersigned realized that a certain instruction used the word "witness" when, because there was more than one witness, the word "witnesses" would have been more appropriate.   The parties were brought to sidebar so that the Court could determine whether the mistake was worth correcting for the jury and, if so, how the parties would like it corrected.   The Court asked if there was anything else to be covered and the Government mentioned that the Court had inadvertently said "true" when the instruction used the word "untrue."   The Court asked if the Government wanted the

36

Defendant essentially complains that he does not like the way the Court granted his request.  In light of the fact that (1) the request for a change to the instruction was granted; (2) the request was granted even though the timing of the objection was questionable since counsel chose to object _after_ the instruction was read to the jury; (3) Defendant had been given over _eight months_ to review the instruction before the charge conference; (4) Defendant had two separate chances for hearing on this issue during the combined forty-nine minutes of the morning and mid-day charge conferences;[11] and (5) Defendant was given the Court's instructions the previous day and had been given the night to review them, Defendant's arguments are frivolous.  The Court hereby incorporates its discussion, _supra_, of Defendant's objections to the money

---

mistake corrected, and the Government said that it didn't believe it would be necessary because the instruction would be clear for the jury when they read it during deliberations.  Ultimately, the Court decided that it preferred to correct the mistake, but it was not at the Government's request.  At that point, the Court again asked if there was anything else to be covered and it was then that counsel for Defendant raised his objection to the money laundering instruction for the first time.

[11]   The record reflects that the morning charge conference began at 8:03 a.m. and ended at 8:35 a.m.  During the morning charge conference, Defendant managed to object to six of the instructions covered, including the instruction immediately following the money laundering instruction.  The money laundering instruction was discussed for three minutes, but counsel for Defendant remained silent during that discussion.  The charge conference began again at the lunch break at 12:00 p.m. and lasted until 12:17 p.m.  During that time, counsel for Defendant posed an objection to the verdict form but, when the Court re-addressed the money laundering instruction two minutes after counsel mentioned the verdict form, Defendant raised no objection.

laundering instruction and, for the reasons stated herein and in the Government's Response (Doc. # 230), Defendant's motion for a new trial or mistrial on this basis is due to be denied.

### 15.  Testimony of George Wisnovsky

Defendant argues that he is entitled to a new trial or mistrial because the Court initially ruled that certain portions of George Wisnovsky's testimony were inadmissible hearsay, but later reconsidered its ruling at Defendant's request and allowed Mr. Wisnovsky to testify.  Once again, Defendant complains that the Court granted his request in a way that he did not prefer. Defendant asked the Court, when it decided to permit Mr. Wisnovsky's testimony, to tell the jury that Mr. Wisnovsky's testimony was admissible because it initially ruled that the testimony was inadmissible.  The Court, in its discretion, believed that such an instruction was unnecessary, given the fact that the witness was being re-called to testify, that he was offering the same testimony, and that no objections to it on hearsay grounds were raised.  Accordingly, Defendant's motion for a new trial or mistrial on this basis is due to be denied.

### 16.  Prejudicial Evidence

Defendant argues that he is entitled to a new trial or mistrial because "a great deal of prejudicial evidence was introduced." (Doc. # 212, p. 22.)  Defendant specifies that when Jeff Justice testified, he said that people "lost their homes" and, when Sherie Miller testified, she said that she "lost her home."

On September 5, 2006, Ms. Miller testified that she was an

38

employee of one of Miralink's client companies.  Ms. Miller also testified that she was injured on the job during the period of time when Miralink had contracted with Regency.  She stated that she received workers' compensation checks in the mail for a period of time, but then her checks stopped coming in the mail.  When the checks stopped coming, she called Miralink to find out when the next check would arrive.  Ms. Miller testified that she was first told that the check would come shortly; however, when the check never came and she called Miralink again, Miralink employees stopped answering the phone.  In the midst of this testimony, the Government asked Ms. Miller whether she had received medical care that needed to be paid during the relevant period of time.  Ms. Miller responded that she had received care and, at the time she received the care, she believed that her bills would be covered by her workers' compensation insurance.  However, she later learned that those bills had not been paid through workers' compensation. At that point, the Government asked Ms. Miller if the bills began to come to her, and Ms. Miller responded that the bills that she believed were being paid eventually did come to her and, without prompting from the Government, added that she lost her home in the process.

The Government did nothing to solicit such a statement and at no point during Ms. Miller's testimony did Defendant object to her statement that she lost her home.[12]  Likewise, Defendant elected not

_____

[12]   Notably, Defendant did object to a different portion of Ms. Miller's testimony only moments after she said she lost her

39

to move for a curative instruction or for Ms. Miller's statement to be stricken from the record.

As Defendant notes, Mr. Justice also mentioned that people had lost their homes.  In the midst of his testimony, Mr. Justice was asked whether it was difficult for him to testify.  In response, Mr. Justice said it was difficult, and that he lost sleep thinking about the people who were hurt and lost their homes when Miralink was not able to honor its obligations.  In contrast to Ms. Miller's statement that she lost her home, when Mr. Justice said that people lost their houses, counsel for Defendant immediately requested permission to approach the bench for a side-bar.  The Court permitted a side-bar and heard counsel's objection to Mr. Justice's statement.  Counsel for the Government stated that he had been completely caught off-guard when Mr. Justice made the statement about people who lost their homes, that he did not intend to elicit such a statement, and that he would promptly move on and avoid any further discussion of people losing their homes.

Defense counsel's request to strike Mr. Justice's statement was denied; however, later, after the jury had been sent home for the day, the issue of Mr. Justice's statement was revisited.  The parties and the Court discussed the fact that there had been some confusion, and the Government noted that it had told Defendant that victims would not testify that they lost their homes and/or slept

---

home.  Defendant had the opportunity to cross-examine Ms. Miller within a few minutes of her statement that she lost her home, but he made no mention of that portion of her testimony during cross-examination.

in cars.   The Government stated that all of the victims had been
cautioned before they testified that they should not mention losing
their homes or having to sleep in cars; however, because Mr.
Justice was not a victim, he had not been similarly cautioned.   The
Government said that the question posed to Mr. Justice was intended
to elicit the response that it was difficult for him to testify
against a family member.   The Government noted for the record that
the reason Mr. Justice was asked if it was difficult for him to
testify was that he was holding his head down, pausing between
answers, and it was obvious that he was strained when he answered
questions.

Ultimately, the Government stated that although it did not
believe that Mr. Justice's testimony was the type of testimony it
had agreed not to elicit, it would not object to the Court striking
Mr. Justice's statement.   At that point, the Court offered to
strike the testimony from the record promptly when the jurors
returned the next morning, and gave Defendant the evening to
contemplate the tactical decision whether to have the material
stricken.   The Court revisited the issue the next day, and counsel
for Defendant made the strategic decision not to have the Court
strike Mr. Justice's statement.

In light of the fact that counsel for Defendant did not even
object to Ms. Miller's statement during her testimony, and made the
tactical decision not to have the Court strike Mr. Justice's
statement when the Court offered to do so, the Court can see no
reason why Defendant should now be heard to complain.   Thus,

41

Defendant's motion for a new trial or mistrial on this basis is due
to be denied.

### 17.   Treatment of Defense Counsel by the Government and the Court

Defendant argues that he is entitled to a new trial or
mistrial because of the way he believes his counsel was treated
during his trial.  For the reasons stated <u>supra</u>, Defendant and his
counsel were treated fairly and with abundant leniency throughout
Defendant's trial; thus, Defendant is not entitled to a new trial
or mistrial on this basis.

### 18.   Speedy Trial

Defendant argues that he is entitled to a new trial or
mistrial because Defendant's Motion to Dismiss for Speedy Trial
Violation was not ruled upon prior to jeopardy attaching in this
case.  For the reasons stated <u>supra</u>, and for the reasons set forth
in this Court's Order on Defendant's Motion to Dismiss, Defendant
is not entitled to a new trial or mistrial on this basis.

## III. CONCLUSION

For the reasons stated herein, Defendant's motions are due to
be denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED**

1.   Defendant's Motion for Arrest of Judgment (Doc. # 213) is
     **DENIED.**

2.   Defendant's Motion for New Trial and Mistrial (Doc. # 212) is
     **DENIED.**

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 1st day of December, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

AUSA

Counsel of Record